45 N.J. Super. 149 (1957)
131 A.2d 807
GEORGE F. ROESCH, 3RD, PLAINTIFF,
v.
MARTIN J. FERBER, SHERIFF OF BERGEN COUNTY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 10, 1957.
*150 Mr. I. William Aronsohn, attorney for the plaintiff.
Mr. Milton Lasher, attorney for the defendant.
SCHNEIDER, J.C.C. (temporarily assigned).
The plaintiff was taken into custody by a state trooper for speeding on February 13, 1957. He was taken to police headquarters in the Borough of Ramsey, in Bergen County, where bail was fixed at $50. The plaintiff is a young law student. He did not have the money. He called his father who is an attorney in Middletown, New York, and he came with the money for the bail.
In the meantime, the plaintiff was committed to the Bergen County jail where over his objections he was photographed and fingerprints taken.
Subsequently he pleaded guilty to the charge of speeding and was fined $20 and costs.
He instituted this suit requesting that the sheriff return the fingerprints and photographs and the sheriff be restrained from sending the photographs and fingerprints to other law enforcement agencies, including the Federal Bureau of Investigation. Despite a request to hold the material until the matter would be decided, the court is informed by the sheriff that the material has been disseminated to the New Jersey State Police and the Federal Bureau of Investigation.
The court has no control over the F.B.I. and the State Police are not party to the suit. The issue may be decided only as to the sheriff.
The plaintiff contends that the fingerprinting and photographing not only caused and still cause embarrassment but may present some practical difficulties in seeking admission to the Bar of New York State.
R.S. 53:1-13 provides as follows:
"The supervisor of the state bureau of identification shall procure and file for record, fingerprints, plates, photographs, pictures, descriptions, measurements and such other information as may be *151 pertinent, of all persons who have been or may hereafter be convicted of an indictable offense within the state, and also of all well known and habitual criminals wheresoever the same may be procured.
The person in charge of any state institution shall furnish any such information to the supervisor of the state bureau of identification upon request of the superintendent of state police."
R.S. 53:1-14 provides that
"The supervisor of the state bureau of identification may procure and file for record, fingerprints, photographs and other identification data of all persons confined in any workhouse, jail, reformatory, penitentiary or other penal institution and shall file for record such other information as he may receive from the law enforcement officers of the state and its subdivisions.
The wardens, jailers or keepers of workhouses, jails, reformatories, penitentiaries or other penal institutions shall furnish the state bureau of identification with fingerprints and photographs of all prisoners who are or may be confined in the respective institutions, and shall also furnish such other information respecting such prisoners as may be requested."
R.S. 53:1-15 provides:
"The sheriffs, chiefs of police, members of the State Police and any other law enforcement agencies and officers, shall immediately upon the arrest of any person for an indictable offense, or of any person believed to be wanted for an indictable offense, or believed to be an habitual criminal, and immediately after the conviction of any person of violations of the provisions of section 2A:170-8 of the New Jersey Statutes, take the fingerprints of such person according to the fingerprint system of identification established by the Superintendent of State Police and on the forms prescribed, and forward without delay two copies or more of the same, together with photographs and such other descriptions as may be required and with a history of the offense committed, to the State Bureau of Identification.
Such sheriffs, chiefs of police, members of the State Police and any other law enforcement agencies and officers shall also take the fingerprints, descriptions and such other information as may be required, of unknown dead persons and forward same to the State Bureau of Identification." (As amended L. 1952, c. 93, p. 427)
The sheriff contends that under section 14 of the above statutes, he is required to furnish fingerprints and photographs of all prisoners confined to his institution.
*152 The plaintiff contends that this must be read together with sections 13 and 15, which refer only to indictable offenses and could not cover a traffic violation.
In the case of Fernicola v. Keenan, 136 N.J. Eq. 9 (Ch. 1944), it was held that one arrested for assault and battery, but never indicted, could not maintain any injunction suit to compel public officers to surrender photos and fingerprints obtained after his arrest. This case, however, presented an indictable offense and came under the statute quoted by the plaintiff (R.S. 53:1-15). The court stated that
"When a man of good repute has a false charge made against him and is cleared of it, it seems the police should destroy his fingerprints and photographs or remove them from the rogues gallery. But in the absence of a statute, discretion in the matter belongs to the police."
In Oberg v. Department of Law and Public Safety, 41 N.J. Super. 256 (Juv. Ct. 1956), a minor's fingerprints were taken upon his arrest for murder. The matter was referred to the Juvenile Court. The court held that
"This statute provides for fingerprints to be taken upon the arrest of a person charged with an indictable offense. Since this plaintiff, because of his age, could not be charged with an indictable offense, there was no right much less a duty, to take his fingerprints."
In this case we read the statutes together and reach a definite conclusion that the law intended that all persons arrested for indictable offenses should be fingerprinted, measured and photographed. From the cases we learn that even if there was a failure to indict or a finding of no conviction, that this data may be retained by the police authorities. But there is nothing that would permit a person charged with violation of a traffic offense to be fingerprinted and photographed.
There is considerable embarrassment to being fingerprinted and photographed and to have this information disseminated to the criminal files of police authorities. It certainly was *153 never intended that this should be the lot of a person arrested for a traffic offense.
The only justification for the claim of the defendant lies in the wording of R.S. 53:1-14 which states that wardens, jailers or keepers of workhouses, jails, reformatories and other penal institutions shall furnish photographs and fingerprints of all prisoners confined to the institution. This must be read together with sections 13 and 15 of the same statute and may be of persons arrested or confined for indictable offenses.
The court has no control over federal authorities or the state authorities not receiving notice of this action. Judgment will be rendered in favor of the plaintiff, ordering the Sheriff of Bergen County to return to the plaintiff his fingerprint records, photographs and measurements, if any, for the purpose of destruction of the same.
There shall be no costs.